FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 3 0 2011

JAMES N. HATTEN, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLIFTON BELL,

Plaintiff,

v.

METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY, CHIEF WANDA
DUNHAM, Personally, ASSISTANT
CHIEF JOSEPH DORSEY,
Personally, And A, B, and C,
Being Those Persons, Firms, or
Entities Presently Unknown to
Plaintiff,

Defendants.

CIVIL ACTION NO.

1:10-CV-1117-JEC

## ORDER & OPINION

This case is before the Court on Defendants' Motion to Dismiss
Plaintiff's Complaint [11]; Plaintiff's Motion for Oral Argument on
Defendant's Motion to Dismiss [19]; Plaintiff's Motion to Amend
Complaint [20] and Second Motion to Amend Complaint [29];
Plaintiff's Motion to Alter or Amend Order Denying Plaintiff's
Request for Temporary Injunction and/or Preliminary Injunction [25];
and plaintiff's First Motion for Preliminary Injunction [30].

The Court has reviewed the record and the arguments of the
parties and, for the reasons set out below, concludes that
Defendants' Motion to Dismiss Plaintiff's Complaint [11] should be

**GRANTED in part and DENIED in part;** Plaintiff's Motion for Oral Argument on Defendant's Motion to Dismiss [19] should be **DENIED;** Plaintiff's Motion to Amend Complaint [20] should be **DENIED;** Plaintiff's Motion to Alter or Amend Order Denying Plaintiff's Request for Temporary Injunction and/or Preliminary Injunction [25] should be **DENIED;** Plaintiff's Second Motion to Amend Complaint [29] should be **GRANTED;** and Plaintiff's Motion for Preliminary Injunction [30] should be **DENIED.**

## BACKGROUND

## I. FACTS ALLEGED IN PLAINTIFF'S ORIGINAL COMPLAINT[1]

Plaintiff brings this civil rights suit pursuant to 28 U.S.C. §1983; he has also asserted state law claims. Plaintiff was a Metropolitan Atlanta Rapid Transit Authority ("Marta") police officer until March 5, 2007, when he resigned.

At the time of his resignation, plaintiff was an administrator for the department. As an administrator, plaintiff coded invoices from various other departments and also had authority to approve small purchases of up to $3,000.00. Plaintiff's resignation followed an internal investigation into his role in the creation of an unauthorized account with Best Buy, after which improper and

---

[1]     The above facts are derived from plaintiff's original complaint [1] and the Court takes all factual allegations in the light most favorable to plaintiff.

2

unauthorized charges were billed to MARTA.

Plaintiff denied any intentional wrongdoing when questioned by investigators, instead claiming that he was acting at the direction of another officer and had assumed that the account was properly authorized. The investigators apparently did not credit plaintiff's explanation and, on March 1, 2007, they reported to Chief Dunham, a defendant in this case, that plaintiff had knowingly made several false statements regarding the account in question, Account #2350.

Defendant Dunham decided to terminate plaintiff's employment and, on March 2, 2007, drafted a termination letter, effective that day, which she placed with a disciplinary action form into plaintiff's field file. The termination letter indicates that a Name-Clearing hearing would be held March 8, 2007. (*Id.* at ¶ 34.)

Plaintiff alleges, however, that this letter was never presented to him, and that he did not learn that it and an accompanying disciplinary action form were in his file until January 2008. Instead of actually terminating plaintiff, defendants Dunham and Dorsey had met with him on March 5, 2007 and, after extensive questioning, told plaintiff that they had received information that he had filled out the entire application to open the account on behalf of Marta. Defendants Dunham and Dorsey further informed plaintiff that they had concluded that the unauthorized purchases at issue could not have occurred without his knowledge or assistance.

3

Defendants Dunham and Dorsey gave plaintiff two options: resign or be terminated for cause for making false statements and having unauthorized communications with a Best Buy representative. Plaintiff chose to resign. In doing so, however, plaintiff was unaware that a termination letter and disciplinary action form existed and would remain in his file. Further, because he had resigned, plaintiff never received the name-clearing hearing referenced in the termination letter and to which he would have been entitled, had he actually been terminated.

In March of 2007, the Peace Officer Standards Counsel (POST) of Georgia notified plaintiff that it had become aware of facts that might affect plaintiff's status as a Peace Officer. Following his resignation, plaintiff made numerous request for copies of his field file and the internal affairs investigation, at times expressly pursuant to the Open Records Act. Finally, on January 11, 2008, plaintiff received a copy of his file and learned then that the termination letter and disciplinary action form had been placed therein. On January 25, 2008, plaintiff received a copy of the internal affairs investigation file. The investigation file is not contained in plaintiff's file, but rather is a separate file subject to the Georgia Open Records Act.

On January 27, 2009, a full year after learning that the objectionable material was in his file, plaintiff requested that

4

defendant Marta remove the termination letter and disciplinary action form from his field file because that material was inaccurate, inasmuch as plaintiff had resigned and had not been disciplined. That same day, defendant Marta denied plaintiff's request.

On January 30, 2009, plaintiff alleges that he received information directly from Best Buy that suggested a fraud had been committed against him.[2] Purportedly from this new information, plaintiff infers, and now alleges, that the defendants had a "stake" in implicating the plaintiff in these events, as, otherwise, the defendants would have been blamed for the misallocation of federal funds that occurred as a result of the Best Buy purchases. Indeed, according to plaintiff, it was a Lt. Heggs who was responsible for the Best Buy purchases and account, and defendants well knew that, as they had authorized Lt. Heggs to make the purchases. From all this, plaintiff concludes that the defendants were motivated to avoid a name-clearing hearing, which goal they accomplished by persuading the plaintiff to resign.

Following this realization, at some time in March 2009, plaintiff again requested that defendant Marta remove all the

---

[2]  Plaintiff's allegations are rambling and wordy, so the logic of this part of his narrative is difficult to follow. Nevertheless, the Court infers that the facts plaintiff learned suggested to him that the conclusions in the original disciplinary report were inaccurate as to him.

conflicting information from his field file, and, for the first time, plaintiff requested that defendant Marta give him a Name-Clearing Hearing.    In May of 2009, defendant Marta denied plaintiff's requests.

Since that time, plaintiff has learned that potential employers have reviewed his field file. Specifically, the United States Secret Service, to whom plaintiff applied for a job in November 2008, reviewed plaintiff's field file in November 2009.[3]

In March 2010, the Fulton County District Attorney notified plaintiff that he would not be pursuing criminal charges against plaintiff as a result of the above events.    Shortly thereafter, on April 14, 2010, plaintiff filed suit in this Court.

## II.  CLAIMS ALLEGED IN PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff sets out three federal claims in his original complaint [1].[4]    Count I is denominated as a § 1983 claim and it alleges that the above conduct by the defendants violated plaintiff's substantive and procedural due process rights, as set out in the

---

[3]    Plaintiff's briefing suggests his belief that the Secret Service may have decided not to offer him a position as a result of the material in plaintiff's MARTA file.

[4]    Plaintiff also sets out a state law claim alleging fraud by the defendants. The defendants have not sought to dismiss this count in this motion, except to ask the Court not to accept supplemental jurisdiction of any state law claim, if the Court dismisses all federal claims.    As set out *infra*, the Court has not dismissed all the plaintiff's federal claims.

Fourteenth Amendment. Plaintiff requests a name-clearing hearing and any other appropriate relief. Count II alleges that by coercing plaintiff to resign, through the use of false information, the defendants constructively discharged him. Plaintiff is not clear as to what constitutional amendment a constructive discharge would implicate. Perhaps, he is asserting the Fourteen Amendment Due Process clause in support of this claim as well, as the only specific relief he requests is a name-clearing hearing. Count III, which is presumably directed at only the two individual defendants, claims a conspiracy to interfere with the plaintiff's civil rights, in violation of 42 U.S.C. § 1985(3). Plaintiff seeks monetary damages for this claim.

Defendants have filed a motion to dismiss the complaint, which, along with other miscellaneous motions, this Court addresses in this Order.

## DISCUSSION

## I.   DEFENDANTS' MOTION TO DISMISS [11]⁵

### A.   Applicable Standard

In deciding a motion to dismiss, the Court assumes that all the

---

⁵   Although defendants' motion to dismiss was filed prior to plaintiff's efforts to amend his complaint, the Court is assuming that nothing in that amended complaint would affect the merits of defendants' motion.   Since the filing of the motion, however, the service of process issue has been resolved and, therefore, defendants no longer assert it as a ground for dismissal.

allegations in the complaint are true and construes all the facts in favor of the plaintiff. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005) (citation omitted). That said, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the "claim has facial plausibility." *Id.*

A court must undergo a three-step analysis when considering a Rule 12(b)(6) motion to dismiss. The court first must identify each element of the cause of action and then identify the allegations that are not entitled to the "assumption of truth." *Id.* at 1950-51. The Court must disregard "[l]egal conclusion[s] couched as [] factual allegation[s]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-51. Finally, the Court must consider the remaining well-pleaded factual allegations to determine if they "plausibly" suggest an entitlement to relief. *Id.* at 1950.

## B. Statute of Limitations Defense

Defendants contend that the applicable statute of limitations for federal claims is two years and that plaintiff's Complaint should

8

be dismissed because plaintiff filed it more than two years after his cause of action arose. Defendants argue that the operative events occurred when the plaintiff resigned, in March 2007, which is more than three years before he filed this lawsuit, on April 14, 2010. At the latest, defendants contend, plaintiff was aware of the facts giving rise to this cause of action on January 25, 2008, by which date he had learned that the offending documents (the termination letter and the investigative file) were still in his field file and in the Internal Affairs file. (Defs.' Mot. to Dismiss [11] at 6-8.) Thus, according to defendants, plaintiff should have filed his lawsuit by January 25, 2010, but instead, he missed the deadline by approximately three months.

In his response, plaintiff agrees that a two-year statute of limitations applies to his federal claims. He likewise agrees with defendants that a statute of limitations does not begin to run until the facts that would support the cause of action are apparent, or should be apparent, to a reasonably prudent person. Plaintiff contends, however, that the statute did not begin to run until January of 2009, when, through an Open Records Act request, plaintiff received documentary evidence that plaintiff believes proves Lt. Hegg to be guilty, and the plaintiff to be innocent, of the conduct on which the defendants purportedly based their decision to seek his

9

termination. (Pl.'s Resp. [13] at 9-12.)[6]

In reply, defendants repeat their contention that, by January 2008, the plaintiff was aware that the inaccurate letter of termination and an investigative file was in existence. Indeed, defendants note, plaintiff was aware of the existence of all the documents that he sought to have removed from his file by January 2008. (Defs.' Reply Br. [18] at 2-4.)

To determine whether or not the plaintiff has complied with the applicable limitations period, the Court must first identify the standard governing such questions. Citing *Rozar v. Mullis,* 85 F.3d 556, 561-62 (11th Cir. 1996), defendants indicate that, under federal law, the statute of limitations does not begin to run until the facts that would support the cause of action are apparent, or should be apparent, to a person with a reasonably prudent regard for his rights. Further, in analyzing the issue, a court must: (1) identify the alleged injuries and (2) determine when plaintiff could have sued for them. *Id.* Defendants further cite *Penoyer v. Briggs*, 206 Fed. App'x 962, 964-965 (11th Cir. 2006) in arguing that a plaintiff does not have to know all the facts regarding the details of his claim, but merely all the facts that would be necessary to support his cause

---

[6] At least, that is what the Court is assuming plaintiff is contending. Plaintiff's pleadings focus mainly on lengthy recitations of the facts. It is difficult, however, to identify precisely what plaintiff's <u>legal</u> arguments are.

of action.  (Defs.' Reply Br. [18] at 3-4.)

The question for the Court, then, is when would the plaintiff be deemed to have learned of the existence of facts sufficient to support a cause of action.  To answer that question, the Court must necessarily identify the elements for the particular cause of action. Unfortunately, neither party has attempted to identify the elements for a procedural due process claim that is based on the failure to provide an employee with a name-clearing hearing.  The Court has therefore attempted, on its own, to identify those elements.

The Eleventh Circuit has held that § 1983 does not provide the basis for a cause of action for reputational damage, alone.  When the damage to one's reputation is sustained in connection with termination of government employment, however, § 1983 may give rise to a procedural due process claim for deprivation of liberty.  *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000).  To recover under such a theory, the plaintiff must satisfy a six-factor test that requires a showing of the following:  (1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) that was made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name-clearing hearing.  *Id.*  The hearing in question can be held either before or after the termination or publication of stigmatizing information.  *Id.*

Here, the false statements at issue appear to be the letter of

11

termination and disciplinary action, which plaintiff would contend falsely indicate that he was fired and disciplined, when plaintiff contends that he was not. Plaintiff also appears to allege that the investigative materials contained in the various files disparage him by falsely suggesting his complicity in the unauthorized creation of an account and purchases at Best Buy.

Further, these "statements" were stimatizing and were made in connection with the plaintiff's termination from his governmental employment. In addition, at some point, these statements were made public, either though the Georgia Open Records Act or through communication of this information to potential employers of the plaintiff. Finally, the defendants offered the plaintiff no hearing at which he could clear his name at the time of termination, as they did not even inform the plaintiff that they were firing him; he was told that he was being allowed to resign. Likewise, after plaintiff later learned that the defendants' position was that they had fired the plaintiff, he requested a name-clearing hearing, which request was declined.

Accordingly, the plaintiff has set out all the elements for a reputational claim. The question for the Court though is whether defendants have adequately demonstrated that the plaintiff filed his complaint more than two years after he gained knowledge of facts that a reasonably prudent person should have realized would support the

cause of action in question. Given the terseness of the defendants'
pleadings, the Court cannot say that defendants have done so just
yet.

As to the false statements, the plaintiff would appear to have
clearly been on notice, no later than January 2008, that the false
termination letter and disciplinary action form was in his file.
Plaintiff also avers, however, that other false investigative
materials were in his file and it appears that he did not learn of
this information until January 2009. Perhaps, the plaintiff could
have been more diligent and learned of these materials sooner, but
from the dearth of discussion of this issue in the pleadings, the
Court would be speculating if it drew that inference at this
juncture. Further, the defendants do not indicate how the Court
should calculate the statute of limitations period when the plaintiff
was aware of some false statements, but not others, outside the
limitations period.

As to the defendants having made the information public, the
Court cannot identify exactly when that event would have occurred,
for purposes of a statute of limitations analysis. In short, the
defendants may ultimately have a winning statute of limitations
argument, but, at this juncture, there are too many dots for the
Court to have to connect on its own, based on the pleadings now
before it.   Accordingly, the Court **DENIES** without prejudice

13

defendants' motion for dismissal based on plaintiff's alleged violation of the statute of limitations.[7]

## C.   Claim That Defendants Conspired To Violate Plaintiff's Civil Rights In Violation Of 42 U.S.C. § 1985(3)

In Count III, plaintiff alleges that defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985(3). Defendants contend that plaintiff has failed to plead an essential element of this claim and therefore the claim must be dismissed.  The Court agrees.[8]

In order to maintain a cause of action under section 1985(3), a plaintiff must plead "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Lucero v. Operation Rescue of Birmingham*, 954 F.2d

---

[7]   Defendants likewise do not sufficiently explain why the statute of limitations would have expired for plaintiff's other two federal claims.

[8]   Defendants also contend that the "intracorporate doctrine" bars plaintiff's conspiracy claim.  The briefing of both parties is so abbreviated on this issue, however, that it is difficult for the Court to make out how this doctrine should apply in this case. Accordingly, the Court does not consider this defense in reviewing defendants' motion.

624, 628 (11th Cir. 1992)(citations omitted).

The second element, however, requires a plaintiff to show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* Plaintiff includes no allegations in his complaint that satisfy this requirement. Plaintiff's failure to adequately plead this element is therefore fatal to his complaint.

In addition, the Court can find no response by plaintiff to this particular argument by the defendants. Accordingly, the claim is also subject to dismissal based on the plaintiff's failure to oppose this defense by defendants, which the Court construes to be an abandonment of his claim. *See Kirkland v. Cnty. Comm'n of Elmore Cnty., Ala.,* 2009 WL 596538, at *2 (M.D. Ala. March 6, 2009)(Fuller, C.J.)(collecting cases from this Circuit and others showing that the failure to respond to a legal argument constitutes abandonment and warrants dismissal of a claim); *Hudson v. Norfolk S. Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)(Carnes, J.)(when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim to have been abandoned.)(citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995)).

Consequently, due to plaintiff's failure to plead the necessary elements of a claim under § 1985(3), the Court **DISMISSES** plaintiff's Count III.

15

## D.    Constructive Discharge Claim

In Count II, plaintiff alleges that defendants created employment conditions so intolerable that they forced plaintiff to resign, thereby causing him to be constructively discharged. The Court infers that plaintiff is arguing that the defendants essentially lied to him about their beliefs that he was culpable in the Best Buy imbroglio, when, in fact, the defendants knew the true story. These lies, presumably, caused him to agree to resign. This conduct by the defendants would appear to be the basis for the claim of constructive discharge.

Defendants' only basis for its motion to dismiss this count is the statute of limitations argument previously rejected by the Court as not being fleshed out sufficiently to permit a dismissal. There being no other ground argued by the defendant for this claim, the Court denies without prejudice defendants' motion to dismiss this claim.

That said, the claim appears quite vulnerable to dismissal based on a properly-made argument. Defendants note, in passing, that there is no separate cause of action under federal law for a constructive discharge and that such a claim must be brought under § 1983. They do not further explore the ramifications of this statement, and instead default to their statute of limitations argument.

In order that future briefing will be appropriately focused when

16

summary judgment motions are filed, the Court notes its agreement that there is no stand-alone constructive discharge cause of action in federal law. *See Smith v. Akstein*, 408 F. Supp. 2d 1309, 1324 n. 17 (N.D. Ga. 2005)(Duffey, J.)(adopting R&R of Hagy, Mag.)(finding no authority for the position that a constructive discharge allegation can exist as a separate cause of action under federal law)(citation omitted).

A constructive discharge may be actionable as an adverse employment action, under federal employment statutes, such as Title VII. But this is not an action brought pursuant to a federal employment statute. A constructive discharge could be actionable as part of a § 1983 claim, but the plaintiff would first have to allege that the constructive discharge arose out of a violation of a constitutional right. Thus far, plaintiff has failed to make this allegation. Accordingly, in any motions for summary judgment, the parties should focus on what, at this point, appears to be a substantial gap in the allegations supporting this claim.

There being no appropriate argument justifying dismissal of this count, however, the Court **DENIES WITHOUT PREJUDICE** defendants' motion to dismiss Count II.

## III. QUALIFIED IMMUNITY OF INDIVIDUAL DEFENDANTS

The above discussion deals with defendants' motion to dismiss the three federal claims as to all defendants based on a statute of

17

limitations defense and, in the case of Count III, the plaintiff's failure to plead an essential element of the claim. The Court has granted defendants' motion to dismiss Count III, but not the first two counts.

Accordingly, the question is whether the individual defendants should receive qualified immunity on these two remaining counts. Citing *Chesser v. Sparks,* 248 F.3d 1117 (11th Cir. 2001) and *Lassiter v. Ala. A&M Univ. Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994),these defendants argue that they are immune from suit unless the plaintiff shows that their conduct violated clearly established constitutional or statutory rights. (Defs.' Reply Br. [18] at 7.) Defendants contend that plaintiff has failed to do so.

In his response, plaintiff makes no effort to demonstrate, as to Count II, that clearly established law would have put the individual defendants on notice that their conduct constituted a constructive discharge of the plaintiff in violation of federal law. As the Court has previously noted, there is no stand-alone constructive discharge claim in federal law and plaintiff has failed to explain what constitutional or statuory right was contravened by the plaintiff's resignation, whether improperly forced or not. Moreover, plaintiff's termination, or forced resignation, is an element of his procedural due process claim. He has not shown how this single element of one cause of action can give rise to a different cause of action.

18

Accordingly, the Court **GRANTS** the individuals defendants' motion for qualified immunity as to Count II.

As to Count I, which, when read generously, alleges a violation of plaintiff's liberty interest under the procedural prong of the due process clause, plaintiff does set out, at length, many facts that purportedly show that defendants did him wrong. Plaintiff does not, however, try to tie that conduct to the elements of a federal claim. Indeed, as noted, neither party has set out in their briefing the elements of a procedural due process claim based on reputational injury associated with dismissal from a governmental job.

As the Court has identified those elements previously, it will repeat them here. A procedural due process claim in this context requires: (1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) that was made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing.

The plaintiff's allegations set out each of these elements as to the individual defendants. There is no dispute that the defendants, collectively, publicly provided stigmatizing information concerning the plaintiff in connection with what they viewed as his termination, and they did not provide him a name-clearing hearing. Defendants will presumably contend that they made no false statements, but plaintiff alleges that they did, and the Court must assume this

19

statement to be true. Accordingly, notwithstanding the spare briefing by both parties on this issue, the Court concludes that plaintiff's allegations, if true, would violate clearly established law. Therefore, the Court **DENIES** without prejudice the individual defendants' motion for qualified immunity as to this count.[9] In summary, the individual defendants remain as defendants only for Count I.

## IV. MOTIONS TO AMEND COMPLAINT

After the defendants had filed their motion to dismiss, the plaintiffs filed a motion to amend [20] and, one week later, a "First Amended Complaint" [21]. According to plaintiff's motion, he sought to amend his complaint to address defendants' allegation that plaintiff had relied upon information in his response brief to the motion to dismiss that was not included in the original complaint. (Pl.'s Mot. to Amend Compl. [20] at 2.)

As best the Court can determine, plaintiff kept the same three

---

[9] The Court's denial is made without prejudice and, accordingly, the individual defendants are free to refile this motion and more thoroughly brief the question of qualified immunity. It would seem to the undersigned, however, that it would be more cost-effective for the client to simply rebrief this issue as part of a motion for summary judgment that will presumably be filed following the conclusion of discovery. Indeed, as the individual defendants were the major players in the events at issue, they will likely be participating in discovery to the same extent, whether or not they are subject to this one count. Further, the litigation will be proceeding as to defendant MARTA regardless of whether defendants refile a motion for qualified immunity.

federal claims and the same state law claim that he had raised in his original complaint. He simply added more allegations. Thus, whereas the original complaint contained 116 numbered paragraphs, this second proposed complaint contained 124 numbered paragraphs. Defendants objected to plaintiff's effort to amend his complaint, largely on futility grounds. (Defs.' Opp'n to Pl.'s Mot. to Amend Compl. [22].)

Then, several months later, plaintiff filed a Second Motion to Amend Complaint [29], indicating that he had become aware of additional information pertinent to his claims. Plaintiff attached a "Second Amended Complaint." ([29-1].) This Second Amended Complaint includes 383 numbered paragraphs. As best the Court can discern, the difference in this complaint and the others, as far as federal claims are concerned, is that the plaintiff has broken down his original Count I § 1983 claim down into three counts, each alleging a § 1983 violation.

Mainly, it appears that plaintiff has broken the claim down in order to allege three separate remedies: the removal of the termination letter, disciplinary action and investigative report from all filed (Count I); the removal of a particular false statement in one of these reports (Count II); and the removal of a CD from one of the reports (Count III). All three counts also seek a name-clearing hearing and monetary damages. As the plaintiff could have sought all

21

of this relief in one count, the Court sees no substantive difference between this version of the complaint and the original iteration.

Count IV then alleges a constructive discharge, as did Count II in the original complaint; Count V alleges a § 1985(3) conspiracy, as did Count III in the original complaint. Count VI alleges a state law fraud claim, as did Count IV in the original complaint. Plaintiff then adds six more state law claims alleging libel by the individual defendants and negligent hiring and retention by defendant MARTA.[10] Defendants objected to plaintiff's motion, contending that this third motion set forth no new material information and was not timely. (Defs.' Opp'n to Pl.'s Second Mot. to Amend Compl. [32].)

The Court concurs with defendants' concerns that plaintiff's multiple, and increasingly lengthy, complaints tend to create a moving target. Nevertheless, although he has renumbered these claims, plaintiff has not added any new federal claims with his latest complaint. As two of plaintiff's federal claims still remain, following this ruling and as it makes sense to use plaintiff's most current iteration as the operative complaint, the Court **GRANTS** plaintiff's Second Motion to Amend Complaint [29] and **DENIES** as moot

---

[10]     The counts are denominated: Count VII-libel, Count VIII-libel; Count VIV (sic)(should be Count IX)-negligent hiring, retention, or supervision; Count X (the same); Count XI (the same); and Count XII (the same).

plaintiff's Motion to Amend Complaint [20].

Translating the effect of this decision, the Court has dismissed only one of plaintiff's original federal claims (the § 1985(3) claim) and as that claim is repeated in the Second Amended Complaint, it is deemed to be dismissed in the Second Amended Complaint, as well. The remaining federal claims proceed forward, along with plaintiff's seven state law claims.

Although these state law claims remain, defendants have not had an opportunity to move to dismiss the six newly-added claims. To allow for that and to expedite the litigation of the federal name-clearing claims that plaintiff is most interested in, the Court will not require the defendants to file an answer to the state law claims nor will it require any discovery for those claims.[11]   Moreover, as it is uncertain that plaintiff's federal law claims will survive a motion for summary judgment, defendants are not required to file a motion for summary judgment on any state law claim at the time that summary judgment motions are due. If any of plaintiff's federal law claims survive, the Court will then confer with the parties regarding the course of proceedings for the state law claims.

---

[11]   The Court will not require discovery for the state law claims, but it has no objections to the parties voluntarily pursuing that discovery, as much of the discovery should overlap with discover on federal law claims and as this discovery will have to be done even if the federal claims are ultimately dismissed and the state law claims are sent to state court for litigation.

## V.     PLAINTIFF'S REMAINING MOTIONS

Plaintiff has filed additional motions attempting to revisit his earlier motion for an injunction: Motion To Alter Or Amend Order Denying Plaintiff Request For Temporary Injunction And/Or Preliminary Injunction [25]; Motion For Preliminary Injunction [30]; and Motion To Supplement Plaintiff's Motion For Temporary Injunction And/Or Preliminary Injunction And Motion To Supplement Plaintiff's Motion To Reconsider Denial Of Plaintiff's Motion For Temporary Injunction And/Or Preliminary Injunction [31]. The Court **DENIES** these motions. Even if plaintiff were treated badly or unfairly by the defendants, not all bad conduct gives rise to a federal cause of action and plaintiff's federal claims remain on shaky legal ground. Accordingly, plaintiff has still failed to convince the Court of his ultimate likelihood of success on these claims.

As to plaintiff's request for oral argument [19], the Court **DENIES** that request.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss Plaintiff's Complaint [11]; **DENIES** Plaintiff's Motion for Oral Argument on Defendant's Motion to Dismiss [19]; **DENIES** as moot Plaintiff's Motion to Amend Complaint [20]; **GRANTS** Plaintiff's Second Motion to Amend Complaint [29]; and

24

**DENIES** Plaintiff's Motion to Alter or Amend Order Denying Plaintiff's Request for Temporary Injunction and/or Preliminary Injunction [25], Motion For Preliminary Injunction [30], and Motion To Supplement Plaintiff's Motion For Temporary Injunction And/Or Preliminary Injunction And Motion To Supplement Plaintiff's Motion To Reconsider Denial Of Plaintiff's Motion For Temporary Injunction And/Or Preliminary Injunction [31].

Defendants shall file an Answer as to all federal claims by **April 25, 2011.** Discovery shall begin on **May 2, 2011,** and end on **August 30, 2011.** Summary judgment motions will be due on **September 20, 2011.**

SO ORDERED, this ___ day of MARCH, 2011.

JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

25